MIRIAM COHEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cohen v. Commissioner
Docket No. 37792-86
United States Tax Court
T.C. Memo 1991-413; 1991 Tax Ct. Memo LEXIS 462; 62 T.C.M. (CCH) 581; T.C.M. (RIA) 91413; August 22, 1991, Filed *462 Decision will be entered under Rule 155. Held: Petitioner is relieved of liability for part of the deficiency for the 1981 taxable year under the provisions of sec. 6013(e). Richard H. Champion and John L. Pollok, for the petitioner. Elise Frost Alair, for the respondent. WHITAKER, Judge. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in Miriam and Benjamin Cohen's Federal income tax and additions to tax as follows: Addition to Tax
Tax Year Ended
Deficiency
Section 6653(b)[1]
December 31, 1981
$ 132,985.29
$ 66,492.64
Mrs. Cohen, petitioner, filed a petition with this Court in which she asserted that she was entitled to be relieved from liability pursuant to section 6013(e). Respondent concedes that petitioner *463 is not liable for the addition to the tax under section 6653(b). After concessions and stipulated settlements, the remaining issue for decision is whether or not petitioner should be relieved of liability for the deficiency for the 1981 taxable year under the provisions of section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, stipulation of settlement, amended stipulation of settlement, second stipulation of settlement, and attached exhibits are incorporated herein by this reference. Petitioner resided in North Hills, New York, at the time her petition was filed. Petitioner signed and filed a joint Federal income tax return for the 1981 taxable year with her husband, Benjamin Cohen, with the Brookhaven Service Center, Holtsville, New York. They reported their income and deductions for the 1981 taxable year on the basis of cash receipts and disbursements. Petitioner left high school after grade 11 to attend a secretarial school. After secretarial school, she worked for an auctioneer, and then was a clerk/bookkeeper for Warner Brothers. Petitioner and Mr. Cohen were married on June 30, 1945, in New York, New York, *464 and have been married since that date. They have two sons, Chester and Bradford. Petitioner worked for 6 months after her marriage. Since then, she has been occupied mainly as a housewife and mother. Petitioner maintains a joint checking account with her husband. During the year in issue, she signed several checks for charities and medical expenses. Petitioner received a weekly allowance of $ 150 in 1981 to buy groceries. Mr. Cohen paid most of the bills, including the mortgage payments, utilities expenses, and other household expenses. At the time of the trial, petitioner and her husband lived at a residence at 30 Frost Pond in North Hills, New York. The Cohens have lived there for approximately 12 years. Petitioner and her son, Chester, acquired this residence on December 12, 1977, for approximately $ 80,000 and mortgaged the property for $ 60,000. Prior to that, for approximately 35 years, petitioner and her husband lived at 60 Emerson Drive in Great Neck, New York. They acquired this residence on March 20, 1951. On August 31, 1955, they transferred this residence to petitioner. She mortgaged the residence on September 28, 1965, for $ 25,359.95. On January 9, 1978, *465 petitioner transferred the ownership of this residence into her name and that of her son, Chester. They mortgaged the residence on November 18, 1982, for $ 90,000. Her son, daughter-in-law, and their two children live in this house. For the 7 years prior to trial, petitioner has spent part of the year in a condominium in Lake Worth, Florida, at 4791 Fountains Drive. Petitioner and her son, Chester, acquired this condominium on July 1, 1973, for $ 40,758 and mortgaged the property for $ 31,600. Prior to that, Mr. and Mrs. Cohen owned another condominium in the same development. In 1981 petitioner belonged to a country club, Pine Hollow Country Club, in East Norwich, Long Island, New York. She owned a Mercedes in 1981. Mr. Cohen bought birthday, anniversary, and Christmas gifts for his wife. Petitioner never received any stocks, securities, bonds, certificates of deposit, other valuable commodities, jewelry, or fur coats from her husband. In 1981 Mr. Cohen and Matthew Ianniello were the owners of C & I Trading Company. They were engaged in selling and obtaining retail businesses for sale. In 1981 they were also involved in the garbage business. Petitioner knew that Mr. *466 Ianniello and her husband were business partners in these businesses. She did not have any interest in either of these businesses. Mr. Cohen never discussed business with his wife. Prior to 1985 petitioner never heard of any of the businesses her husband was connected with which gave rise to the deficiency. Petitioner did not know any of her husband's business associates other than the Ianniellos whom she had known for approximately 20 years. Petitioner was not involved in the preparation of the family's tax returns. Generally, petitioner's husband would give petitioner the tax return and tell her to sign the return. Petitioner did not ask any questions about or review the 1981 tax return. In 1981 petitioner did not know the source of her husband's income reported on the tax return other than the income from C & I Trading. [2]
*467 In 1971 and 1985 Mr. Cohen was indicted on various charges. On April 28, 1971, Mr. Cohen and Mr. Ianniello were indicted in the United States District Court for the Southern District of Florida for conspiring to defraud the United States during the period beginning on or about June 1, 1963, continuously until the date of the indictment, April 28, 1971, in violation of 18 U.S.C. section 371, including alleged affirmative acts under sections 7201 and 7206(1). The indictment contains no reference to petitioner. The indictment was subsequently transferred to the United States District Court for the Eastern District of New York. In 1973 following a jury trial, Mr. Cohen and Mr. Ianniello were acquitted of all charges included in the indictment. On August 5, 1985, Mr. Cohen, together with 13 other defendants, including his son, Chester, was indicted in part for tax evasion under section 7201, and conspiracy to defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of the Internal Revenue Service under 18 U.S.C. section 371. Petitioner was not mentioned in this indictment. This indictment included counts for tax evasion with respect to the *468 tax returns of P and G Funding, a New York corporation, doing business, during the 1981 taxable year, as the "Mardi Gras," a bar located at 1599 Broadway, in the Times Square area of Manhattan. On December 30, 1985, the jury returned a guilty verdict against Mr. Cohen on, inter alia, two counts of tax evasion for preparing and filing false and fraudulent corporate income tax returns of P and G Funding for the 1979 and 1980 taxable years in violation of section 7201 and four counts of tax evasion for preparing and filing false and fraudulent personal income tax returns for the 1979, 1980, 1981, and 1982 taxable years in violation of section 7201. The conviction was based, in part, on the finding that over the 4-year period, 1979 through 1982, Mr. Cohen, Mr. Ianniello, and Paul Gelb received $ 2,000,000 from P and G Funding, which they shared equally and which they failed to report on their respective Federal income tax returns. The jury returned a special verdict of forfeiture against Mr. Cohen for the portion of that amount attributable to him. On February 12, 1986, the United States District Court for the Southern District of New York entered a judgment of conviction against *469 Mr. Cohen. On December 4, 1986, the United States Court of Appeals for the Second Circuit affirmed Mr. Cohen's conviction in United States v. Ianniello, 808 F.2d 184 (2d Cir. 1986). Mrs. Cohen heard that her husband had a problem in Florida, but she did not know any details. She did not know that he was arrested. Petitioner did not know anything about her husband's legal problems until 1985 or later. On the 1981 tax return, the Cohens reported gross income of $ 124,125, adjustments to income, itemized deductions, and exemptions totaling $ 51,468, leaving taxable income of $ 72,657. In the statutory notice of deficiency, respondent, after adjustments, determined that the Cohens' taxable income totaled $ 330,450. The deficiency determined by respondent is based on the following adjustments to the joint Federal income tax liability of petitioner and Mr. Cohen for the 1981 taxable year: Adjustment
Amount
Capital Gains (F.I.C. Associates)
($  14,873.40)
Subchapter S Loss (Oswego Electronics)
54,000.00 Subchapter S Loss (Gamma Computers)
52,000.00 Unreported Income (P and G Funding)
166,667.00 Total
$ 257,793.60 In the statutory notice *470 of deficiency, respondent disallowed the Cohens' distributive share of losses with respect to Oswego Electronics (Oswego) and Gamma Computers (Gamma). Oswego and Gamma are part of respondent's First World Investors tax shelter project. The Oswego and Gamma issues have been settled in accordance with an Amended Stipulation of Settlement. In the Amended Stipulation of Settlement, the parties agreed that petitioner would be jointly and severally entitled, with Mr. Cohen, in the 1981 taxable year, to an ordinary deduction of: $ 10,500, which represents 75 percent of the cash expended in acquiring Oswego and $ 10,125, which represents 75 percent of the cash expended in acquiring Gamma, should it be determined that petitioner is not entitled to innocent spouse relief with respect to these losses. The parties also agreed that petitioner is not entitled to any other losses, deductions, or credits resulting from her interests in Oswego and Gamma for the 1981 taxable year, except as stated above. Pursuant to a Second Stipulation of Settlement, the parties agree that petitioner is entitled to an adjustment, as proposed in the statutory notice, for capital gains in regard to F.I.C. Associates *471 in the amount of ($ 14,873.40) for the 1981 taxable year. In the statutory notice, respondent increased the Cohens' gross income by $ 166,667, which represents the unreported income from P and G Funding. The parties stipulated that this amount ($ 166,667) is attributable to Mr. Cohen for the 1981 taxable year. The parties stipulated that before the application of the provisions of section 6013(e), there is a deficiency due from petitioner in the amount of $ 132,985.29, attributable to the adjustments described above. At the trial in this case, petitioner did not call her husband to testify. OPINION Section 6013(a) allows a husband and wife to make a single return jointly of Federal income taxes even though one of the spouses has neither gross income nor deductions. Section 6013(d)(3) provides that in the case of a joint return, the liability of the spouses with respect to the tax shall be joint and several. However, section 6013(e), as amended by the Deficit Reduction Act of 1984, [3] provides a certain measure of relief if the following four conditions are met by the taxpayer claiming innocent spouse status: (A) a joint return has been made under this section for a taxable *472 year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,
Sec. 6013(e)(1)(A) through (D). Petitioner bears the burden of proving that she is entitled to relief under the innocent spouse provisions. See Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Bokum v. Commissioner, 94 T.C. 126, 138 (1990); Sonnenborn v. Commissioner, 57 T.C. 373, 381 (1971); *473 Rule 142(a). The failure to meet any element precludes an individual from qualifying as an innocent spouse. Bokum v. Commissioner, supra at 138. A joint return was filed by Mr. Cohen and petitioner for the 1981 taxable year. Respondent concedes that the first requirement of section 6013(e)(1)(A) is met. Respondent contends, however, that the other requirements for relief under section 6013(e) have not been met with respect to both the losses and the unreported income. The second requirement for relief under section 6013(e) is that petitioner must prove that there is a substantial understatement of tax on the 1981 tax return which is attributable to grossly erroneous items of Mr. Cohen. Sec. 6013(e)(1)(B). A substantial understatement is defined in section 6013(e)(3) as "any understatement (as defined in section 6661(b)(2)(A)) which exceeds $ 500." Grossly erroneous items as defined in section 6013(e)(2) means: (A) any item of gross income attributable to such spouse which is omitted from gross income, and (B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law.
Individual items of income *474 or deductions may be separately considered in determining whether there is a substantial understatement of tax attributable to grossly erroneous items of one spouse. See Purcell v. Commissioner, 86 T.C. 228, 235-236 n.3 (1986), affd. 826 F.2d 470 (6th Cir. 1987). We will determine whether petitioner is an innocent spouse with respect to each item. With respect to income, any omission of gross income constitutes such an error. Sec. 6013(e)(2)(A). The parties have stipulated that $ 166,667, which represents the portion of the $ 2,000,000 from P and G Funding, is attributable to Mr. Cohen for the 1981 taxable year. This income was omitted from the 1981 tax return. Therefore, this amount is a grossly erroneous item. The understatement of tax attributable to this item exceeds $ 500. Therefore, the second requirement for relief is met with respect to this item. With respect to the claimed losses, petitioner must demonstrate that these claimed losses have no basis in law or fact. Sec. 6013(e)(2)(B). In Douglas v. Commissioner, 86 T.C. 758, 762-763 (1986), this Court stated that: a deduction has no basis in fact when *475 the expense for which the deduction is claimed was never, in fact, made. A deduction has no basis in law when the expense, even if made, does not qualify as a deductible expense under well-settled legal principles or when no substantial legal argument can be made to support its deductibility. Ordinarily, a deduction having no basis in fact or in law can be described as frivolous, fraudulent, or, to use the word of the committee report, phony. [Fn. ref. omitted.]
Petitioner contends that the tax shelter deductions claimed on the Cohens' 1981 tax return were frivolous or phony, had no basis in fact or in law and, therefore, were necessarily grossly erroneous. This contention is based upon the report (RAR) of the revenue agent who examined the various tax shelters promoted by First World Investors and the terms of the Amended Stipulation of Settlement. Respondent objects to the admission of the RAR based on relevancy. Respondent argues that the RAR is the revenue agent's position and does not necessarily represent the position of respondent taken in the statutory notice of deficiency. Further, respondent argues that petitioner's attempt to introduce the RAR goes behind the *476 statutory notice of deficiency in violation of the principles set forth in Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974). Alternatively, respondent argues that even if the RAR is considered, it does not establish that the losses claimed in regard to Oswego were grossly erroneous, since the RAR noted that the "total disallowance is made since no documentation nor books and records were presented to substantiate the R & D [research and development] expenses deducted." Generally, this Court will not go behind the statutory notice of deficiency. Greenberg's Express, Inc. v. Commissioner, supra. This is not a case in which an exception to this rule would apply. See Jackson v. Commissioner, 73 T.C. 394, 401 (1979); Greenberg's Express, Inc. v. Commissioner, supra at 328; Saavedra v. Commissioner, T.C. Memo 1988-587. Therefore, we conclude that the RAR is not admissible in evidence. In the statutory notice, the losses were disallowed on the basis that the Cohens failed to establish that they were entitled to any portion of the loss. Respondent has conceded in the Amended *477 Stipulation of Settlement that, if petitioner is not entitled to innocent spouse relief, she is entitled to certain ordinary deductions of $ 10,500 and $ 10,125 for the 1981 taxable year which represents 75 percent of the cash expended in acquiring Oswego and Gamma, respectively. The Amended Stipulation of Settlement also provides that petitioner is not entitled to any other losses, deductions, or credits resulting from her interests in Oswego and Gamma for the 1981 taxable year. There is no provision which notes whether or not the losses claimed had any basis in fact or law. Petitioner cannot rely on respondent's disallowance in the statutory notice or her inability to substantiate the losses to prove the lack of basis in fact or law. Douglas v. Commissioner, supra at 763. It is not possible to determine from the Amended Stipulation of Settlement whether the losses had a basis in fact or law. Petitioner has not offered any evidence to establish that the losses claimed have no basis in fact or law. The fact that petitioner conceded that respondent's adjustments with respect to the losses are correct is not sufficient to establish that the claimed losses *478 were in an amount for which there was no basis in fact or law. Purcell v. Commissioner, supra at 239. We conclude that petitioner has failed to satisfy this requirement with respect to the claimed losses.[4] Therefore, petitioner is not entitled to innocent spouse relief with respect to these claimed losses. Since we have concluded that there is a substantial understatement of tax attributable to the omitted gross income of $ 166,667, we must determine whether petitioner meets the last two requirements for relief with respect to this item. The third requirement of section 6013(e)(1) is that petitioner must establish that at the time of signing the 1981 tax return, she neither knew nor had reason to know that there was a substantial understatement of tax attributable to grossly erroneous items of Mr. Cohen. Sec. 6013(e)(1)(C). The issue *479 regarding petitioner's knowledge is essentially factual. In determining whether petitioner had reason to know of the understatement, we must consider whether at the time of signing the return, a reasonable person in petitioner's circumstances could be expected to know of the substantial understatement or that the reported tax liability was erroneous or that further investigation was warranted. Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979); Mysse v. Commissioner, 57 T.C. 680, 699 (1972). Petitioner argues that she had no knowledge of her husband's business affairs and that her limited education and work experience contributed to her inability to understand the tax return. Petitioner never discussed the 1981 tax return with her husband. Her husband told her to sign the 1981 tax return and she did. She did not review the return and did not ask any questions about the return. Petitioner's education is limited. She was employed outside the home briefly for 6 months. Since then she has been a housewife and mother. We conclude that petitioner had no actual knowledge of the substantial understatement of tax. See Estate of Brown v. Commissioner, T.C. Memo 1988-297. *480 We must determine whether petitioner had reason to know that there was a substantial understatement of tax attributable to grossly erroneous items of her husband. Petitioner's husband effectively excluded her from knowledge of business affairs, family financial matters, and the contents of the tax return. See, e.g., Terzian v. Commissioner, supra at 1170-1171; Bell v. Commissioner, T.C. Memo 1989-107; Estate of Probinsky v. Commissioner, T.C. Memo 1988-371; Bouskos v. Commissioner, T.C. Memo 1987-574. In 1981 petitioner believed that her husband worked in the garbage business and for C & I Trading Company as a business broker. Petitioner did not participate in any of her husband's business activities. Her husband did not discuss his business activities with her. Petitioner had no knowledge of her husband's other business affairs or his business associates. Mr. Cohen controlled the family finances. The couple shared a joint checking account, but Mr. Cohen paid most of the family's bills. Petitioner was given an allowance for food and household expenses. Thus, a reasonable person with Mrs. *481 Cohen's lack of business sophistication and lack of access to the family's financial activities could not reasonably have known of the understatements. Petitioner did not receive lavish gifts and neither petitioner nor her husband made expenditures subsequent to their receipt of the omitted income that should have put a reasonable person in Mrs. Cohen's position on notice that understatements in tax had been made. Terzian v. Commissioner, supra;Mysse v. Commissioner, supra.
Respondent argues that the history of her husband's activities should have put petitioner on notice that she should inquire as to the accuracy of their tax return. We are concerned with what petitioner knew or had reason to know in 1982 when she signed the 1981 tax return. Petitioner was not aware of her husband's legal problems or the events underlying these problems until 1985 or later. Without such knowledge, petitioner could not be put on notice that she should inquire as to the accuracy of their 1981 tax return. Anderson v. Commissioner, T.C. Memo 1975-104. Respondent further argues that the fact that she did not call her husband to testify is *482 also indicative of the possibility that such testimony would not be favorable for petitioner, citing Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). We are convinced that petitioner is a credible witness and, as such, has provided sufficient evidence to establish that she did not know and had no reason to know that there was a substantial understatement of tax on the 1981 tax return. The only other testimony offered was that of Jerome Brickman, an accountant. Mr. Brickman testified as to petitioner's level of sophistication of tax matters. He testified that he showed petitioner the 1987 and 1988 tax returns and discussed them with her. His testimony was inconsistent and relates to petitioner's knowledge in 1987 and 1988 and, as such, is not helpful or relevant to our determination. We conclude that in signing the 1981 return, petitioner did not have reason to know that there was a substantial understatement of tax on the 1981 tax return. The final requirement for innocent spouse relief is that, taking into account all of the facts and circumstances, it would be inequitable to hold the *483 spouse seeking such relief liable for the deficiency attributable to the substantial understatement. Sec. 6013(e)(1)(D). Personal benefit from a substantial understatement is a factor to be considered in making an equity determination. Purcell v. Commissioner, 86 T.C. at 242. Normal support is not a significant benefit for purposes of determining whether it is inequitable to hold petitioner liable for a deficiency. Terzian v. Commissioner, 72 T.C. at 1172. Unusual transfers of property, even years after the receipt of the omitted income, may constitute a significant benefit to the spouse receiving the property. Terzian v. Commissioner, supra at 1172. Respondent argues that it would not be inequitable to hold petitioner liable for the deficiency because petitioner is still married to Mr. Cohen and the allowance in 1981 for household and personal use could be considered above normal support. Further, respondent points out that petitioner has acquired real estate from her husband. Petitioner argues that it would be inequitable to hold her liable for the deficiency because her husband was compelled to forfeit the money *484 he skimmed. The Cohens owned a house and a condominium. These properties were purchased in earlier years prior to the receipt of the omitted income. Petitioner did not benefit from the receipt of the omitted income as a result of any transfers of such property. Zinser v. Commissioner, T.C. Memo 1978-256. The Cohens enjoyed a comfortable standard of living throughout their marriage. Petitioner received a weekly allowance of $ 150. This allowance is not above normal support considering the family's income in 1981. We conclude that it would be inequitable to hold petitioner liable for the deficiency with respect to the omitted income. Accordingly, we hold that petitioner is not entitled to innocent spouse relief under section 6013(e) with respect to the losses, but is entitled to relief with respect to the omitted income. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. At the trial, petitioner's counsel argued that petitioner never signed the 1981 tax return, but in fact, a secretary signed the return. He offered this evidence not to contest the signature, but rather as evidence that petitioner never saw or reviewed the return. Respondent objected on the basis that petitioner stipulated that she signed the return. This Court stated that since petitioner stipulated that she signed the return, whether or not she signed the return is not an issue in this case.↩
3. The Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 494, 801-802, amended sec. 6013(e)↩ retroactively to all years to which the Internal Revenue Code of 1954 applies.
4. Since we have concluded that petitioner has failed to prove that the claimed losses are unfounded, we need not address the requirements of sec. 6013(e)(4)↩.